UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOELLE PREMO,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES POSTAL SERVICE,
and JOHN DOE,

    Defendants.

Case No. 07-13188

HONORABLE AVERN COHN

_____/

# MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. Introduction

This is tort case. Plaintiff Joelle Premo is suing defendants, the United States, the United States Postal Service, and "John Doe under the Federal Tort Claims Act ("FTCA"),[1] 28 U.S.C. § 1346 et seq., for injuries she suffered when she was struck by a postal truck. The government argues that summary judgment is appropriate on all of Premo's claims because (1) her injuries do not constitute a "serious impairment of body function" under Michigan's No-Fault Insurance Law, Mich. Comp. L. § 500.3135 necessary to recover non-economic damages and (2) she cannot recover economic

---

[1] Under the FTCA, the only proper defendant is the United States. 28 U.S.C. § 2679. Although the government has not moved to dismiss the postal service or John Doe as defendants, for clarity the Court shall refer only to the government as a defendant.

damages under No-Fault under the circumstances.[2] The parties appeared before the Court for a hearing, at which the Court directed Premo to file a supplemental paper. The supplemental paper has been filed. The matter is now ready for decision. For the reasons that follow, the motion will be granted in part and denied in part. Premo is not entitled to recover non-economic damages but may recover economic damages in the event the government is found liable at trial.

## II. Background

On August 7, 2006, Premo, then 19 years old, was riding her bicycle in Royal Oak, Michigan. While riding through a cross walk, she was struck by a postal truck and injured. Premo suffered multiple fractures to her leg, ankle and foot which required surgery. The nature of her injuries will be discussed infra.

Premo does not own an automobile and does not have automobile insurance. Premo, through counsel, attempted to file a claim for personal injury protection (PIP) benefits against the government under Michigan's No-Fault Act under the government's "self-insurance program." On September 15, 2006, a Tort Claims Examiner/Adjuster of the Postal Service Law Department, National Tort Center, wrote to Premo, stating in part:

> The Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. § 2671-80, provides the exclusive means of pursuing a claim against the federal government based on negligence of one of its agencies or their employees, 28 U.S.C. § 2679(b)(1). Therefore, Michigan No-Fault does not apply to the United States.

---

[2]The government's argument that summary judgment is warranted because Premo did not suffer a serious impairment of body function goes only to her claim for non-economic damages. In its reply brief, however, the government addressed Premo's claim for economic damages. As such, the government has presented arguments on all of Premo's claims.

Premo then filed a claim under the FTCA, seeking $197,569.80 for personal injury and property damage. On May 18, 2007, Premo was notified that her claim was denied on the grounds that an investigation failed to reveal any negligence on the part of the Post Office or its employees.

Premo then filed the instant action. She seeks damages for "medical services, lost wages, pain and suffering, fright and embarrassment, emotional trauma, damages to . . . personal property (her bicycle) and future damages and injuries as yet unknown." Complaint at ¶ 20. In other words, she is seeking economic and non-economic damages.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

3

summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Analysis

A. The FTCA

It is well established that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). See also Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128 (1972). An absolute prerequisite to maintaining an action against the United States is a specific waiver of sovereign immunity. Under the FTCA, 28 U.S.C. § 1346(b), a federal district court has jurisdiction to hear claims

4

> ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 2674 also sets forth the limited waiver of immunity in pertinent part as follows: "The United States shall be liable . . . <u>in the same manner and to the same extent as a private individual under like circumstances</u>. . . ." (Emphasis added).

Therefore, in order to determine whether a tort action can be brought against the United States, the law of the state in which the act occurred is determinative. See Frazier v. United States, 412 F.2d 22, 23 (6th Cir. 1969). Here, it is undisputed that the law to be applied in this case is that of Michigan, since the accident and alleged negligence occurred in Michigan. The government's liability must be determined as it would be for an individual defendant under the same circumstances.

B.  Whether Michigan's No-Fault Act Applies

The first issue presented is whether Michigan No-Fault Automobile Insurance Act, M.C.L. § 500.3101, et seq. applies to Premo's claim against the government. Premo says that the No-Fault Act does not apply, arguing that Sixth Circuit case law does not support its application and the government is estopped from contending it applies based on the letter Premo received stating that the No-Fault Act does not apply.

Courts in this Circuit have frequently applied Michigan's No-Fault Act to the United States in cases under the FTCA for damages arising from an automobile accident. See e.g. Jones v. United States, No. 06-10995, 2007 WL 614186 (E.D. Mich. Feb. 26, 2007) (unpublished); Neal v. United States, No. 95-70991, 1996 WL 33333461 (E.D. Mich. Mar. 25, 1996) (unpublished); Westfield Co. v. United States, 858 F. Supp.

5

658 (W.D. Mich. 1993); Yeary v. United States, 754 F. Supp. 546 (E.D. Mich. 1991); McAdoo v. United States, 607 F. Supp. 788 (E.D. Mich.1984); Zotos v. United States, 654 F. Supp. 36 (E.D. Mich. 1986).

Premo says these cases were wrongly decided and ignore the Sixth Circuit's decision in United States v. Ferguson, 727 F.2d 555 (6th Cir. 1984) and the Supreme Court's decision in United States v. Standard Oil, 332 U.S. 301 (1947). This argument is not well-taken. Both cases involved the government as a plaintiff, not a defendant and are otherwise inapplicable. In Standard Oil, the Supreme Court held that liability for damages incident to negligent injury of soldier by third persons was governed by federal law rather than by the law of the state where the soldier was injured because the scope, nature, legal incidents and consequences of the relation between persons in service and the government are fundamentally derived from federal sources and governed by federal authority. Thus, the decision apply federal common law instead of state tort law rested on the unique fact that the injured person was a soldier. That is not the case here.

In Ferguson, the Sixth Circuit held that Michigan's No-Fault Act did not apply to a negligence action brought by the government against a motorist. However, the court of appeals emphasized that at issue was the government's interest in preventing destruction of its property and not the "fair and efficient recovery of accident damages by a Michigan resident. 727 F.2d at 557. Here, the issue is the extent to which a Michigan resident can recover damages. Thus, the holding in Ferguson does not apply.

Moreover, the court of appeals in Ferguson also noted that there was no federal statutes indicating Congress' consent to the application of state law to determine the

6

extent of the government's recovery against the negligent acts of motorists. Here, the FTCA specifically provides for the application of state law to determine the government's liability. While Premo suggests that it is "supremely hypocritical" for the government to not be bound by the confines of the No-Fault Act when it is a plaintiff and yet be able to use it to shield liability when it is a defendant, this question is for Congress, not a court.

## C. Estoppel

Premo also argues that the government should be estopped from arguing the No-Fault Act applies based on the correspondence she received from a government agent stating that the No-Fault act did not apply. This argument fails. First, "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law." Heckler v. Community Health Serv., 467 U.S. 51, 63 (1984). Second, equitable estoppel is rarely available against the government and usually requires at a minimum some form of affirmative misconduct. See United States v. Guy, 978 F.2d 934, 937 (6th Cir. 1992). No such conduct is alleged here. Thus, even assuming the correspondence was incorrect, Premo cannot make out a claim for equitable estoppel.

Moreover, the context in which the statement was made indicates that it may not have been as inaccurate as Premo contends. The statement that No-Fault did not apply was made in response to a letter from Premo's attorney requesting guidance on filing a claim for PIP benefits under Michigan law in which he explicitly stated he was not seeking to file a tort claim. The response that the No-Fault Act did not apply related to a PIP claim filed directly with the government. The response correctly noted that any

7

claims against the government must be under the FTCA.

### D. Premo's Claim for Non-Economic Damages

Having determined that Michigan's No-Fault Act applies to Premo's claim, the question becomes the extent to which she can recover damages against the government.

With respect to non-economic damages, Michigan law allows recovery for non-economic damages only if the injured person "suffered death, serious impairment of body function, or permanent serious disfigurement." M.C.L. § 500.3135(1). A "serious impairment of body function" means an "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." M.C.L. § 500.3135(7).

Whether a plaintiff has suffered a serious impairment of body function or permanent serious disfigurement is a question of law if the court determines "that there is no factual dispute concerning the nature and extent of the person's injuries." M.C.L. §500.3135(2)(a)(I). If there is factual dispute, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement, the Court can decide the question as a matter of law. M.C.L. § 500.3135(2)(a)(ii).

The framework for determining whether an injury meets the requirements of M.C.L. § 500.3135(1) was established by the Michigan Supreme Court in <u>Kreiner v. Fischer</u>, 471 Mich. 109 (2004). Under <u>Kreiner</u>, a court must first determine whether an important body function has been impaired, rather than merely injured. The impairment must be objectively manifested; subjective complaints that are not medically

8

documented are insufficient. Kreiner, 471 Mich. at 132. If an objective manifestation exists, the Court must then engage in an objective analysis to see whether the accident has affected the plaintiff's "general ability" to conduct the course of his life." Kreiner, 471 Mich. at 133.

1. Factual dispute regarding Premo's injuries[3]

As outlined in Kreiner, the Court's first step is determining whether there is a "factual dispute concerning the nature and extent of the person's injuries." While Premo says that a factual dispute exists, there is no real dispute over the fact that Premo suffered fractures to her left leg, ankle, and foot. Moreover, the government relied solely on Premo's deposition testimony and medical records and does not dispute the accuracy of these, with the exception of Premo's subjective complaints. Therefore, the

---

[3]In her response, Premo argues that the scar on her ankle constitutes a "serious permanent disfigurement," citing Minter v. Grands Rapids, 275 Mich. App. 200 (2007) where the court of appeals held, 2-1, that a question of fact existed as to whether scar above elderly pedestrian's eyebrow was a "permanent serious disfigurement" although the scar was small because the plaintiff testified that scar caused embarrassment and prevented her from moving her eyebrow in a "normal" manner. The Michigan Supreme Court reversed on this point. Minter v. Grand Rapids, 480 Mich. 1181 (2008). Thus, the value of Minter is limited at best.

Moreover, Michigan courts have concluded that scars, particularly ones in less conspicuous areas, do not constitute a serious permanent disfigurement. See Luther v. Stoeckel, No. 280772, 2008 WL 1914880 (Mich. Ct. App. May 1, 2008) (unpublished) (four inch scar on spine not sufficient); Buys v. Cooper, No. 274798, 2007 WL 1556128 (Mich. Ct. App. May 24, 2007) (unpublished) (five inch scar along outside of plaintiff's leg not sufficient); Madkins v. Lynem, No. 258533, 2006 WL 932371 (Mich. Ct. App. Apr. 11, 2006) (unpublished) (scar on "inside portion of the ankle" not sufficient).

Here, Premo says the government failed to question her about the scar; this is incorrect. At deposition, Premo was asked about and described scar tissue along the top right side of her left foot and some scar tissue near her ankle and at the top of the foot down to her toes. She was not questioned by either the government or her counsel regarding the effect the scar has on her life. Absent this evidence, which Premo must produce to overcome summary judgment, the Court must conclude that Premo has not shown to scar to be a permanent serious disfigurement.

first requirement is met, and the Court may proceed to the next inquiry, whether her important body functions has been impaired.

### 2. Important body function

The second factor requires the court to determine if an "important body function" has been impaired. That term has been defined to mean that the affected body function must be important as opposed to unimportant, and that the body function is not merely injured but is impaired. Id. Here, the evidence shows that Premo's injury impaired her ability to walk and stand, at least initially after her surgery and during rehabilitation. Walking is an important body function. Cassidy v. McGovern, 415 Mich. 483, 505 (1982). Thus, this element is satisfied.

### 3. Objectively manifested impairment

"'[I]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis.'" Jackson v. Nelson, 252 Mich. App. 643, 654 (2002) (quoting Michigan Model Civil Jury Instruction § 36.11). In general terms, this means that there must be some medical support for the plaintiff's claims of injury, as "[s]ubjective complaints that are not medically documented are insufficient." Kreiner, 683 N.W.2d at 625. An objectively manifested injury is a medically identifiable injury or condition that has a physical basis. Jackson, 252 Mich. App 643 at 653. Thus, the injury "must be capable of objective verification by a qualified medical person either because the injury is visually apparent or because it is capable of detection the use of medical testing." Netter v. Bowman, 272 Mich. App 289, 305 (2006) (footnote omitted). Here, hospital records confirm Premo's fractures. Thus, the injuries were objectively manifested.

### 4. Premo's general ability to lead her normal life

The final hurdle for a plaintiff seeking non-economic tort damages from an automobile accident is to show that "the impairment [of an important body function] affects the plaintiff's general ability to lead his or her normal life." Kreiner, 471 Mich. at 132. First, this is a subjective analysis that focuses on the individual plaintiff's particular life. Secondly, the analysis examines how the plaintiff's life changed following the accident, compared to their prior life. "Merely 'any effect' on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's 'general ability' to lead his life." Id. at 133 That said, it is not necessary that every aspect of a plaintiff's life change in order for them to be eligible for non-economic tort damages. Id. at n. 16.

In determining this, courts look at: (a) the nature and extent of the impairment; (b) the type and length of treatment required; (c) the duration of the impairment; (d) the extent of any residual impairment; and (e) the prognosis for eventual recovery. Kreiner, 471 Mich. at 133. Significantly, "[s]elf-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." Id. at n. 17.

Here, Premo suffered multiple fractures to her left leg and ankle. She underwent surgery two days after the accident performed by Dr. Nowinski. After the surgery, she was in a cast, given a walker and instructed to elevate her foot. At a follow-up appointment the following week, she was given a removable cast and was able to use crutches about a month after the accident, or by September 9, 2006. Premo recalled at deposition that she was walking by Thanksgiving of 2006. Progress notes of follow-up

visits with Dr. Nowinski indicate the fractures healed normally.  The most recent progress note, dated March 6, 2007, states that Premo is "doing well.  No significant pain or problems."  Dr. Nowinski has not imposed any long term restrictions or prescribed any medications.

At the time of the accident, Premo was working part-time at the Royal Oak library as a library aid.  After the accident, Premo was off work for about a month.  She returned to work on and was able to perform her duties, even though she had to elevate her leg and therefore did "sitting only" work.  Premo was also attending classes at the time of the accident.  She testified at deposition that she was able to send in her work and did not have to drop the classes.

As to her activities, while she was obviously restricted from walking while her injury healed, Premo testified at deposition that she is able to engage in her same favorite activities - hiking, camping, riding her bike, swimming, sewing, playing music, baking and cooking - since the accident and at about the same frequency.  However, she also stated that on certain days her ankle is "stiff or sore" and is "hesitant to walk to work" a couple times a month because of the soreness/stiffness.

Based on the above, Premo has not established that her injury has affected the general ability to lead her normal life.  She is able to engage in the same activities.  Although she says her ankle is sometimes stiff or sore and is "not the same," she does not take, nor been prescribed, any pain medications and she is not under any physical restrictions.  Moreover, while she says she is likely to suffer from arthritis, there is no objective medical evidence to support this claim.  At most, Premo's restrictions are the result of her subjective beliefs about her injuries which are not sufficient to show that her

general ability to lead her normal life has been affected by the accident.

Indeed, Michigan Courts addressing injuries similar to or more severe that Premo's have likewise concluded that those injuries do not constitute a serious impairment of body function. In Rathbun v. Hubbell, No. 265177, 2006 WL 626262 (Mich. Ct. App. Mar. 14, 2002) (unpublished), the plaintiff suffered a broken ankle in an car accident. Although the plaintiff did not have surgery, she used a cast, boot and brace for several months. The plaintiff, like Premo, was able to walk within weeks of the accident using a walker or cane. Her ankle was designated "healed" five months after the accident. The Michigan Court of Appeals concluded that plaintiff's general ability to lead her life was not affected. In Jones v. Jones, No. 274627, 2007 WL 3409355 (Mich. Ct. App. Nov. 15, 2007) (unpublished), the plaintiff broke his leg in a car accident which required surgery including the insertion of a rod and screws. Plaintiff stayed in the hospital for four days and had in-home health care for several months after the accident. She required assistance with her daily activities during that time and used a wheelchair and walker. Her last medical evaluation showed the fracture had "healed nicely." Plaintiff claimed she had a permanent limp and required a cane. The Michigan Court of Appeals, however, noted that plaintiff had not been diagnosed with a limp and no physician required her to use a cane. She was also able to engage in an exercise routine, albeit less frequently.

Premo has not meet the showing of a serious impairment of body function. As such, the government is entitled to summary judgment on Premo's claim for non-economic damages.

E. Premo's Claim for Economic Damages

Premo is also seeking damages for lost wages and medical bills. She says she is entitled to these regardless of what is available to her in terms of non-economic damages. Premo raised the issue of her entitlement to economic damages in her response brief. As noted above, the government's responded to Premo's argument regarding economic damages appears in its reply brief.

Under the No-Fault Act, economic damages are considered PIP (personal injury protection) benefits under M.C.L. § 500.3107. PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," three years of work loss with a monthly cap, expenses reasonably incurred in obtaining ordinary and necessary replacement services for a three-year period with a daily cap, and for survivor loss. M.C.L § 500.3107 and § 500.3108.

The government says that Premo is not entitled to economic damages (or PIP benefits) because such benefits are provided by an insurer under the No-Fault Act regardless of fault and the government has not waived immunity for strict liability claims. The government cites Westfield Co. v. United States, 858 F. Supp 658, 663 (W.D. Mich. 1993). In Westfield, the district court found that a plaintiff was not entitled to recover for property damage from the government stemming from an accident where an Army convoy truck crashed into their business. The district court held that the No-Fault Act applied to the government and the government is to be treated as an insured entity under the act. The district court also held, however, that although a private individual would be liable for property damages under the No-Fault Act, the government was not,

14

explaining:

> This court determines, however, that the United States may not be held liable for the damage caused to the building of Jim and Susan Mabee, housing The Clothing Company, pursuant Federal law. As noted above, an absolute prerequisite to maintaining an action against the United States is a specific waiver of sovereign immunity. The waiver of immunity, 28 U.S.C. § 1346(b), expressly requires as an element of the claim proof of either negligence or wrongfulness. This has been interpreted by the courts to bar actions against the federal government based on strict liability. See, e.g., Lively v. United States, 870 F.2d 296 (5th Cir.1989). This waiver, pursuant to 28 U.S.C. § 2679(b)(1), is the exclusive remedy for property damage resulting from the operation by any employee of the federal government of a motor vehicle.
>
> The No-Fault law is essentially a strict liability statute. Property damages under M.C.L. § 500.3121 are to be paid regardless of fault; the code specifies that "property protection insurance benefits are due under the conditions stated in this chapter without regard to fault." M.C.L. § 500.3121(2). Inasmuch as the goal of the No-Fault Act was to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation, no provision was made for bringing a cause of action based in negligence. Plaintiff's only remedy under the No-Fault Act is in strict liability.
>
> Consequently, this court holds that United States has not granted a specific waiver of sovereign immunity which would allow the instant suit to be brought. Therefore, this court has no subject matter jurisdiction.

Westfield, 858 F. Supp. at 663.

The issue is not so clear cut as the government contends. Although Westfield is persuasive, it was addressing liability for property damages, not economic damages arising from personal injury.

Moreover, under the No-Fault Act, economic damages arising from a personal injury, known as PIP benefits, are paid by an insurer. Here, Premo was a pedestrian and is not covered under any policy of insurance. Thus, she is not an insured who can collect from an insurance company. Where a pedestrian is injured in an automobile accident, the No-Fault Act provides for a priority for determining whose insurance carrier

15

is to pay benefits. M.C.L. § 500.3115 provides:

> a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
> (a)  Insurers of owners or registrants of motor vehicles involved in the accident
> (b)  Insurers of operators of motor vehicles involved in the accident

The government is considered self-insured under the No-Fault Act since federal vehicles are not required to be registered in Michigan or have insurance. See Westfield. Premo argues that the under the No-Fault regime as applied to the government, the government should be deemed to operates as an insurer and therefore be obligated to pay her PIP benefits.

As noted at the hearing, accepting the government's argument results in a situation where an individual injured due to the negligent operation of a government vehicle is unable to collect economic damages if they are uninsured because they have no insurer from whom to seek such damages. Such a position is untenable even within the strict parameters of the FTCA.

The Court's research reveals two cases in which a claim for economic damages in a FTCA case arising from an automobile accident was permitted within the framework of Michigan's No-Fault Act. In McAdoo v. United States, 607 F. Supp. 788 (E.D. Mich. 1984), a plaintiff was injured when his car was struck by a government struck. Plaintiff sued the government under the FTCA and sought economic and non-economic damages. The government did not contest liability - only damages were at issue. The district court applied the No-Fault Act to plaintiff's non-economic damages claim and found that plaintiff's injuries met the threshold of serious impairment of body function and awarded damages. The district court also awarded economic damages, noting that

even if plaintiff did not meet the threshold for recovering non-economic damages, he would still be entitled to damages.

Second, in <u>Contreras v. United States</u>, No. 1:03-CV-360, 2004 WL 3457632 (W.D. Mich. Oct 26, 2004) (unpublished), the plaintiff was rear ended by a postal truck and sued for economic and non-economic damages under the FTCA. The government moved for partial summary judgment on her claim for non-economic damages on the grounds her injuries did not meet the no-fault threshold. The district court denied the motion. The Amended Final Pretrial Order included a claim for economic damages. The case settled prior to trial.

V.  Conclusion

For the reasons stated above, the government's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The case will proceed to trial on liability. If established, plaintiff will be able to seek recovery for economic damages.

SO ORDERED.

                            s/Avern Cohn  
                            AVERN COHN  
                            UNITED STATES DISTRICT JUDGE

Dated:  October 2, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2008, by electronic and/or ordinary mail.

                            s/Julie Owens  
                            Case Manager, (313) 234-5160